Affirmed and Opinion filed June 2, 2005









Affirmed and Opinion filed June 2, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NOS. 14-03-01372-CR

              14-03-01373-CR &

         
14-03-01374-CR

_______________

 

THUONG TRAN, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

_________________________________________________________________

 

On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause Nos. 919,455; 928,750
& 928,751

_________________________________________________________________

 

O P I N I O N

Appellant, Thuong Trang, was convicted of three separate
counts of aggravated sexual assault of a child. 
A jury sentenced appellant to eight years= imprisonment for each count, and the
trial court granted the State=s motion to cumulate the sentences.  In six issues, appellant contends that (1)
the trial court erred by denying his challenge for cause of a prospective
juror, (2) the trial court erred by permitting the state to ask improper
commitment questions during voir dire, (3) the evidence is legally and
factually insufficient to support his convictions, and (4) the trial court
erred by cumulating his sentences.  We
affirm.








I.  Background

In May 2001, O.T. told several children at her school that
appellant, O.T.=s grandfather, had sexually assaulted her.  One of the children informed a teacher, who
then notified the school counselor, Marsha Krieger.  Krieger spoke to O.T. in private, and O.T.
confided that appellant had sexually assaulted her on three separate
occasions.  At trial, Krieger testified
regarding O.T.=s description of these three
incidents.  On the first occasion,
appellant was babysitting O.T. and her siblings when appellant took O.T. into
the bedroom and inserted his penis into O.T.=s vagina and rectum.  On the second occasion, appellant was
babysitting O.T. at O.T.=s apartment when appellant took O.T. into the bedroom and
once again Araped@ and Asodomized@ her. 
Finally, on the third occasion, O.T. was in the bathroom at appellant=s home when appellant entered the
bathroom and forced O.T. to perform oral sex on him.  When O.T. gagged, appellant proceeded to rape
and sodomize her in the bathroom. 

O.T. also testified at trial that appellant sexually
assaulted her on three separate occasions. 
O.T. testified that the first sexual assault occurred at appellant=s home.  O.T. and her siblings were watching
television when appellant took O.T. into the bedroom and closed the door,
leaving her siblings in another room. 
Appellant placed O.T. on the bed, pulled her pants down, and placed her
legs over his shoulders.  O.T. testified
that appellant put his penis into her Abutterfly part,@ which was O.T.=s word for her genitals.

According to O.T., the second sexual assault occurred in
appellant=s bathroom.  O.T. was sitting in the bathroom when
appellant entered the bathroom, pulled down O.T.=s pants, and placed her legs over his
shoulders.  Appellant took spit from his
mouth and put it on O.T.=s Abutterfly part@ before putting his penis
inside.  Appellant then stopped, turned
O.T. around, and placed his penis into her Abottom.@








According to O.T., the third sexual assault occurred at O.T.=s house.  O.T. could not remember with certainty where
in the house the incident occurred, but stated that it was probably in her
bedroom on her bunk bed.  O.T. testified
that appellant tried to make O.T. kiss him, but O.T. backed away.  Appellant licked O.T.=s Abutterfly part@ and then put his penis inside O.T.=s mouth while pushing her head up and
down.

After O.T. made her outcry concerning the alleged sexual
assaults, she was taken to the Children=s Assessment Center for a sexual
assault examination.  A pediatrics nurse
practitioner, Deborah Parks, interviewed O.T. and performed the sexual assault
examination. In her report, Nurse Parks indicated that, during the examination,
she discovered a separation in O.T.=s hymen.  

At trial, Dr. Rebecca Girardet testified on behalf of the State.  Although Dr. Girardet did not perform O.T.=s examination, she reviewed Nurse
Parks= records and a videotape of the
examination.  Dr. Girardet testified that
O.T.=s hymenal tissue was minimal, which
could indicate recurrent vaginal trauma. 
However, Dr. Girardet testified that most experts are reluctant to
conclusively determine that minimal hymenal tissue is the result of vaginal
trauma. She testified that minimal hymenal tissue could be normal for O.T.=s age.  Dr. Girardet further testified that after
reviewing the videotape of the examination, she was unable to confirm whether
there was a separation in O.T.=s hymen. 

II.  Denial of Challenge for Cause

In his first issue, appellant contends the trial court erred
by denying his challenge for cause of venireperson Goranson.  Appellant contends venireperson Goranson is
challengeable for cause because of her Arepeated statements that she could
not be fair@ to appellant. 








A venire member is challengeable for cause if she has a bias
or prejudice in favor of or against the defendant. See Tex. Code Crim. Proc. Ann. art.
35.16(a)(9) (Vernon 1989).  In the context of jury service, prejudice simply means a Aprejudgment.@  Anderson v. State, 633 S.W.2d 851, 853
(Tex. Crim. App. 1982).  Bias is an
inclination toward one side of an issue rather than to the other which leads to
the natural inference that a juror will not, or did not act, with impartiality.  Id. 
Under article 35.16(a)(9), it is not necessary to show a particular bias
or prejudice in favor of or against the defendant.  Sosa v. State, 769 S.W.2d  909, 918 (Tex. Crim. App. 1989).  It is sufficient that the prospective juror
states that she cannot be a fair and impartial juror.  Id.

Bias is established as a
matter of law when a prospective juror admits that he is biased for or against
the defendant.  Anderson, 633
S.W.2d at 854.  When a prospective juror
is shown to be biased as a matter of law, she must be excused when challenged,
even if she states that she can set aside her bias and provide a fair
trial.  Id.  However, it is left to the discretion of the
trial court to initially determine whether such a bias exists and the court=s decision will be
reviewed in light of all of the answers given. 
Id.  Unlike the trial
court, we cannot observe nor listen to the venireperson and deference is
therefore given to the trial court=s decision.  Feldman v. State, 71 S.W.3d 738, 744
(Tex. Crim. App. 2002).  

Toward the end of voir dire examination, appellant=s counsel asked
the venire members if there was A[a]nything you can
think of that you want to tell me before I sit down?@  Venireperson Wood responded:

I think I would have to say the things that I have heard or maybe the
things that we have not heard kind of lead me to believe that our only thing
that we=re going to hear is the victim and this is what we=re going to have to go
on.  I=m thinking if they
decided to press charges it must be a pretty convincing witness.  And I=m thinking, hum, to put a
young person through that kind of trauma of going through the trial, I don=t know, I=m, I=m not sure I could be
impartial.

 

Counsel then asked if any other venire members agreed with
Ms. Wood, and the following exchange occurred:

Venireman
Chickowski:  No. 8.  I think I might be a little impartial
[sic].  The age group is in my age range
. . . .  You know, depending about how
the facts would come out, I just want you to know I=m concerned about that,
that=s all.








Defense Counsel:  You have a concern but you think you could be
fair, all right.

 

Venireman Goranson: 
No 5.  I=d have a similar concern.  

Defense Counsel:  As Ms. Wood. 
You couldn=t be fair?

Venireman Goranson:  Right.

 

Venireperson Goranson=s first response
in the above dialogue indicates that she had a Asimilar concern@ as venireperson
Wood: she would have a propensity to give greater credibility to a young
witness the State was willing to put through the trauma of a trial.  A predisposition to give greater weight or
credibility to the State=s witness is
effectively a bias against the defendant. 
Jones v. State, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998).  Therefore, a venire member is challengeable
for cause under article 35.16(a)(9) if she cannot impartially judge the
credibility of witnesses.  Id.  However, this means only that jurors must be
open-minded and persuadable, with no extreme or absolute positions regarding
the credibility of any witness.  Id.  A venire member is not challengeable for
cause simply because she would give a certain class of witnesses an edge in
terms of credibility because complete impartiality cannot be realized as long
as human beings are called upon to be jurors. Ladd v. State, 3 S.W.3d
547, 560 (Tex. Crim. App. 1999). 
Although venireperson Goranson=s first response
indicated that she was inclined to give greater credibility to a child witness
put through the trauma of a trial, she did not manifest an extreme or absolute
belief that would be immune to persuasion. 
She only stated that she had a Asimilar concern@ as to whether she
could be impartial.  Therefore,  Goranson=s first response
does not give rise to a challenge for cause. 
Likewise, Goranson=s second response
appears to merely confirm that her Aconcern@ was the same as
that expressed by Ms. Wood.

After the above exchange was completed, appellant=s counsel
proceeded to propound questions based upon the response given by venireperson
Wood:  

Defense Counsel: All
right.  34 and 35, you feel the same way
as Ms. Wood, you couldn=t be fair?  (Cards Raised)

 








Defense Counsel: 34, 35, 36, 60.  Speak now or forever hold your peace.  

Defense Counsel: 19, 20,
24.  You feel that way, sir, like Ms.
Wood, because of the allegations you couldn=t be fair?

 

Venireperson Laster: Yeah.

 

Defense Counsel: 15, you feel the same way as Ms. Woods does?

 

Venireperson Standish: Yes.

 

Defense Counsel: No 41[1], all
right.  64, yes ma=am.  60, 61, 32. 
Is that everybody?  I called
everybody=s name out?

 

Venireperson Goranson: No. 5.

 

Appellant appears to rely on the above
dialogue to argue that venireperson Goranson could not be fair based on the
allegations in the case.  However,
after a careful review of the dialogue, we are unable to conclude that Goranson
affirmatively stated that she could not be fair based on the allegations in the
case.  Goranson did not directly respond
to the question posed by appellant=s counsel in which he asked some of the prospective jurors if,
like Ms. Wood, they could not be fair based on the allegations in the
case.  Goranson only responded after
appellant=s counsel asked juror 15 if he felt the same way as Ms. Wood.  Therefore, Goranson=s response appears to
only confirm that she agreed with the Aconcerns@ expressed by venireperson Wood. 
As previously discussed, venireperson Wood merely indicated that she
would be inclined to give greater credibility to a child witness put through
the trauma of a trial.  This inclination,
however, does not give rise to a challenge for cause to either Wood or
Goranson.[2]








After reviewing the record, we are
unable to conclude that venireperson Goranson made Arepeated statements
that she could not be fair@ to appellant.  Accordingly,
the trial court did not abuse its discretion by denying appellant=s challenge for
cause.

We overrule appellant=s first issue.

II.  Commitment Questions

In his second and third issues,
appellant contends that the trial court erred by allowing the State to ask two
improper commitment questions during voir dire. 
Specifically, appellant complains of the following questions which
sought to determine if the venire members could reach a guilty verdict based on
the testimony of only one witness:

(1) ASome people say, you know what, based
solely on the testimony of one witness, even if I believe that witness is
credible, they proved all of your elements beyond a reasonable doubt, I couldn=t do it, I
couldn=t convict somebody based solely on the
testimony of that one witness.  That=s what I need
to know.  I=ll go juror by
juror.  Our answer is pretty simple, yes
or no, could youBif I present one witness, that witness
you find to be credible and they testify as to all my elements beyond a reasonable
doubt, could you find that person guilty?@

(2) AOkay, change it around.  For those of you that said >Yes,= would your
answer change if it was a child witness? 
And a child witness, as defined under the law in this case, is anyone
under the age of 14.  Raise your card for
me if your answer would change from yes to no. 
If you already said no you don=t need to
raise your card.  If you said yes, would
it change if that witness is under the age of 14 as defined by law; would your
answer change?@             








The trial court has broad discretion
over the process of selecting a jury.  Barajas
v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); Allridge v. State,
762 S.W.2d 146, 167 (Tex. Crim. App. 1988). 
Therefore, we will not disturb the trial court=s ruling on the
propriety of a particular question during voir dire absent an abuse of
discretion. Barajas, 93 S.W.3d at 38; Allridge, 762 S.W.2d at
163.

The test for determining when a voir
dire question calls for an improper commitment consists of three steps. Standefer
v. State, 59 S.W.3d 177, 179B84 (Tex. Crim. App .2001). 
The first step requires the trial court to determine whether a
particular question is a commitment question. 
Id. at 179.  If the court
determines that a particular question is a commitment question, the court must
then decide whether the question gives rise to a valid challenge for
cause.  Id. at 181B82.  If the question meets the Achallenge for cause@ requirement, the
court must then determine whether the question includes only those facts
necessary to test whether a prospective juror is challengeable for cause.  Id.








The first question of which appellant
complains constitutes a commitment question because it required prospective
jurors to commit to convict a defendant or to resolve issues concerning witness
credibility under a particular set of facts--the testimony of only one
witness.  See Standefer, 59 S.W.3d
at 179 (holding that a commitment question is a question that Acommit[s] a
prospective juror to resolve, or to refrain from resolving, an issue in a
certain way after learning a particular fact@).  Because the first
question constitutes a commitment question, we must further inquire to
determine whether the question gives rise to a valid challenge for cause.  Id. at 181B82.  A venireperson is challengeable for cause if
he would hold the State to a higher standard than Abeyond a reasonable
doubt.@  Coleman v. State, 881 S.W.2d 344, 360
(Tex. Crim. App. 1994).  Consequently, a
prospective juror is properly subject to a valid challenge for cause if he
indicates that he could not convict based on the testimony of one witness, even
if he believed that witness beyond a reasonable doubt.  See Castillo v. State, 913 S.W.2d 529,
533 (Tex. Crim. App. 1995).  However, a
prospective juror is not challengeable for cause if the venireperson would require
more than one witness to be convinced beyond a reasonable doubt.  See Zinger v. State, 932 S.W.2d 511,
514 (Tex. Crim. App. 1996).  Here, the
State asked whether the venire members could convict based on the testimony of
one witness if they believed that witness beyond a reasonable
doubt.  A negative response to this
question would properly give rise to a valid challenge for cause, and
therefore, meets the second requirement for a proper commitment question under Standerefer.


Even when a question meets the Achallenge for cause@ requirement, the
question may still be improper if it includes facts in addition to those
necessary to establish a challenge for cause. 
Standerfer, 59 S.W.3d at 182. 
However, the question in this case was not fact intensive, but rather
only included those facts necessary to determine whether a prospective juror
was challengeable for cause.  Therefore,
the State=s first question was a proper commitment question.

The second question of which appellant
complains focused on whether the prospective jurors could convict a defendant
based solely on the testimony of  a child
witness if they believed that witness beyond a reasonable doubt.  The record reflects that appellant did not
make an objection to this question in the trial court.  To preserve error for appellate review, the
complaining party must make a timely, specific objection at the earliest
possible opportunity.  See Tex. R. App. P. 33.1; Goldberg v.
State, 95 S.W.3d 345, 368 (Tex. App.CHouston [1st Dist.] 2002, pet ref=d). Because Appellant made no objection, he has failed to preserve
his complaint for appeal. 

We overrule appellant=s second and third
issues.

III.  Sufficiency of the
Evidence








In his fourth and fifth issues,
appellant contends that the evidence is legally and factually insufficient to
support his convictions.[3]  In reviewing the legal sufficiency of evidence,
we view all of the evidence in a light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318B19 (1979); Young v.
State, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000).  In conducting this review, we do not engage
in a second evaluation of the weight and credibility of the evidence, but only
ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v.
State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In reviewing the factual sufficiency of evidence, we view all of
the evidence in a neutral light and determine whether the evidence of guilt,
standing alone, is too weak to support the finding of guilt beyond a reasonable
doubt, or the evidence contrary  to the
verdict is so strong that the beyond-a-reasonable-doubt standard could not have
been met.  Zuniga v. State, 144
S.W.3d 477, 485 (Tex. Crim. App. 2004). 
Although we review the fact finder=s weighing of the
evidence, and we are authorized to disagree with the fact finder=s determination, our
evaluation should not substantially intrude upon the fact finder=s role as the sole judge
of the weight and credibility given to witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  In our review, we must
consider the evidence that the appellant claims most undermines the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). 

A person commits the offense of aggravated sexual assault of a
child if he intentionally or knowingly causes the sexual organ of a child
younger than fourteen years of age to contact or penetrate the mouth, anus, or
sexual organ of the actor, or another person, or causes the penetration of the
mouth of the child by the sexual organ of the actor.  See Tex.
Pen. Code Ann. ' 22.021(a)(1)(B), 2(B)
(Vernon Supp. 2004B05).  Appellant was convicted of three counts of
the charged offense.  In cause number
919,455 appellant was convicted of placing his sexual organ inside the sexual
organ of O.T.  In cause number 928,750,
appellant was convicted of placing his sexual organ in the anus of O.T.  In cause number 928,751, appellant was
convicted of causing the penetration of O.T.=s mouth with his sexual
organ.








Appellant first asserts that the evidence is legally insufficient
to support his convictions.  However, as
appellant concedes in his brief, O.T. testified to all elements of each of the
charged offenses.  In sexual abuse cases,
the testimony of the child victim alone is sufficient to support the
conviction.  Tear v. State, 74.
S.W.3d 555, 560 (Tex. App.CDallas 2002, pet. ref=d); Ruiz v. State,
891 S.W.2d 302, 304 (Tex. App.CSan Antonio 1994, pet.
ref=d).  Therefore, under the facts of this case, the
evidence is legally sufficient to support appellant=s convictions for the
three counts of aggravated sexual assault of a child. 

Appellant next contends the evidence is factually insufficient to
support his convictions.  In support of
his factual insufficiency argument, appellant raises various arguments
attacking the credibility of the testimony given by O.T. and Marsha
Krieger.  Specifically, appellant
contends (1) neither O.T. nor Krieger described the alleged incidents of sexual
assault in Agraphic detail,@ (2) the testimony of
Krieger and O.T. is conflicting as to the location of the incidents of sexual
assault, (3) O.T.=s father testified that
O.T. was untruthful, needed a great deal of attention, and had falsely accused
him of abuse, and (4) regarding the allegations in cause number 928,751, O.T.
could only say that it was Aprobable@ the incident occurred in
the bedroom and she was Aprobably@ asleep when appellant Aprobably@ came in her
bedroom.   








It is within the sole province of the jury to reconcile conflicts,
contradictions, and inconsistencies in the evidence.  Bowden v. State, 628 S.W.2d 782, 784
(Tex. Crim. App. 1982).  The jury is also
the judge of the credibility of the witnesses, and it is free to believe or
disbelieve any portion of a witness= testimony.  Cain v. State, 958 S.W.2d 404, 408B09 (Tex. Crim. App.
1997); Sharp v. State, 707 S.W.2d 611, 614 (Tex. App. 1986).  Here, the jury was presented with some
inconsistent testimony from O.T. and Marsha Krieger concerning the location of
the alleged sexual assaults, as well as the exact incidents that transpired
during the sexual assaults.  The jury
heard and considered the inconsistencies in the testimony and determined that
appellant was guilty of all three counts of aggravated sexual assault.  Considering all of the evidence in the case,
and deferring to the jury=s role as the sole judge
of the weight and credibility given to witness=s testimony, we are
unable to conclude that the inconsistencies in the testimony are enough to
declare the verdict factually insufficient. 


Appellant further argues that the evidence is factually
insufficient because Nurse Parks Afalsely reported@ that there was a
separation of O.T.=s hymen.  Appellant points out that Dr. Girardet did
not observe a separation of O.T.=s hymen when she reviewed
the videotape of the examination. 
Appellant also points out that Nurse Parks used only one position when
examining O.T. for signs of sexual abuse, but it is common practice to use
multiple positions when doing this type of examination to confirm, or exclude,
whether the examination position may have contributed to the abnormality
finding.  

Although Dr. Girardet could not confirm the separation of O.T.=s hymen, there is no
evidence to show that Nurse Parks Afalsely reported@ a separation.  Moreover, we conclude that the credibility of
Nurse Parks= testimony, and the
conclusions she drew from her physical findings, is properly left to the jury=s determination.[4]   








Finally, appellant contends that it is unlikely that the alleged
incidents of sexual assault actually occurred because (1) O.T.=s father and siblings
never heard of the alleged occurrences although they lived with O.T. in a
one-bedroom apartment, and (2) appellant worked twelve to sixteen hours a day,
and when appellant was home, his wife was Aconstantly@ present.[5]  While this evidence suggests that appellant
did not have a large window of opportunity to commit the alleged sexual
assaults, it does not necessarily lead a rational jury to conclude that
appellant did not commit the offenses. 
Accordingly, we are unable to conclude that this evidence renders the
verdict factually insufficient.

Viewing all of the evidence in a neutral light, we cannot say the
evidence of guilt, when considered by itself, is too weak to support a finding
beyond a reasonable doubt that appellant committed the charged offenses or the
contrary evidence is so strong that the beyond-a-reasonable-doubt standard
could not have been met.  Accordingly, we
hold that the evidence is factually sufficient to support the jury=s finding of guilt for
each of the alleged offenses.

We overrule Appellant=s fourth and fifth
issues.

IV.  Cumulation of Sentences








In his sixth issue, appellant contends that the trial court abused
its discretion by cumulating appellant=s sentences.[6]  A trial court has discretion to cumulate
sentences in virtually every case.  See
Tex. Code Crim. Proc. Ann.
art. 42.08(a) (Vernon Supp. 2004B05).  An exception to this rule is found in Texas
Penal Code Section 3.03(a), which provides that when a defendant is found
guilty at a single trial of more than one offense arising out of the same
criminal episode,[7]
the sentences for each offense must run concurrently.  Tex.
Pen. Code Ann. ' 3.03(a) (Vernon
2003).  However, Section 3.03(b)(2)(A)
exempts certain offenses, including aggravated sexual assault of a child, from
the application of Section 3.03(a).  In
this case, the charged offenses were for aggravated sexual assault of a child,
and therefore, the trial court was authorized to cumulate the sentences under
Section 3.03(b)(2)(A).

When, as here, the law authorizes the imposition of cumulative
sentences, the trial court has absolute discretion to cumulate the sentences,
and a defendant has no right to a concurrent sentence.  See Smith v. State, 575 S.W.2d
41, 41 (Tex. Crim. App. 1979). 
Therefore, the trial court did not abuse its discretion by cumulating
appellant=s sentences.

We overrule appellant=s sixth issue.  Accordingly, the
judgments of the trial court are affirmed.

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and
Opinion filed June 2, 2005.

Panel consists of Chief
Justice Hedges and Justices Fowler and Seymore.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  Venireperson
Wood is number 41.  





[2]  We note that
venireperson Goranson=s response in this dialogue is susceptible to the
interpretation that she was attempting to indicate that she could not be fair based
on the allegations in the case. 
However, we cannot reach that conclusion for two reasons.  First, we are faced with a Acold record@ and
must consider Goranson=s responses in light of the questions that actually
appear in the record.  Here, as
previously discussed, the question to which venireperson Goranson responded was
whether she agreed with Ms. Wood; not whether she could be fair based on the
allegations in the case.  Second, the
questions posed by appellant=s counsel in which he asked some prospective jurors
whether, like Ms. Wood, they could not be fair based on the allegations in the
case, is a misleading question. 
Venireperson Wood did not state that she couldn=t be fair based on the allegations in the case.  It is highly plausible that venireperson
Goranson recognized this inconsistency in the questions, and therefore, did not
directly respond to the questions in which appellant=s counsel asked the venire members if, like Ms.
Wood, they could not be fair based on the allegations in the case. 





[3]  Appellant
invites this court to review the legal and factual sufficiency of the evidence
under the standards enunciated by the Texas Supreme Court in In re J.F.C.,
96 S.W.3d 256 (Tex. 2002) and In re C.H.,  89 S.W.3d 17 (Tex. 2002).  However, we decline to do so.  In criminal matters, we apply the standards
of review for sufficiency of the evidence challenges enunciated by the Texas
Court of Criminal Appeals.  See, e.g.,
Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004). 





[4]  As part
of  appellant=s factual insufficiency argument, he Aincorporates@ all of
the arguments raised in his legal sufficiency argument.  We note that in his legal insufficiency
argument, appellant raised several arguments attacking the lack of physical
evidence in the case.  Despite appellant=s contentions, there was some physical evidence
to  indicate that O.T. was sexually
abused, including: (1) Dr. Girardet=s
testimony that O.T.=s minimal hymenal tissue could be an indication
of vaginal trauma; and (2) Nurse Parks= report
indicating a separation of O.T.=s hymen. 
Moreover, Dr. Girardet testified that more often than not, in sexual
abuse cases, there are no signs of physical abuse.  Accordingly, the sparseness of physical
evidence does not render the verdict factually insufficient.  





[5]  Although
appellant contends that his wife was constantly present, we note that O.T.=s sister testified that there were occasions when
appellant would babysit the children by himself.





[6]  Specifically,
appellant contends that the trial court unfairly decided to cumulate appellant=s sentences because: (1) appellant was sixty-three
years old at the time of trial and is likely to die in prison; (2) appellant
has no prior criminal history and was eligible for probation; (3) appellant is
a veteran of the Vietnam War; (4) appellant sponsored three Viatnamese children
for entry into the United States; (5) O.T. did not exhibit any emotional or
physical signs of abuse after the alleged sexual assaults; (6) there is no
likelihood of future abuse because Child Protective Services has removed O.T.
from her father=s custody, and appellant has been sentenced to the
Texas Department of Criminal Justice; and (7) the jury Aobviously@
believed appellant deserved a lesser sentence. 





[7]  One definition
of Acriminal episode@ is the Acommission of two or more offenses [when] . . . the
offenses are the repeated commission of the same or similar offenses.@  Tex. Pen. Code Ann. ' 3.01 (Vernon 2003).